GULOTTA, Judge.
This is a dispute arising out of a demand for payment of the costs for the overhaul of an engine of a vessel owned by defendant.
The facts are that plaintiff performed three overhaul jobs on an engine of defendant’s vessel. In October, 1969 the engine was overhauled at a cost of $6,732.68. This job is referred to as Job No. 1. In January, 1970 a second “short overhaul”[1] was performed for which Point Landing paid Diesel $5,010.28. This is referred to as Job No. 2. On February 4, 1970 an inspection was made of the engine at a cost of $59.51, subsequently paid by defendant, and on February 5, 1970 a third job was done on the engine. On this occasion, an exchanged engine was placed in defendant’s vessel by plaintiff at a cost of $6,241.-90. This is Job No. 3. On April 29, 1971, approximately 14 months after Job No. 3, a fourth overhaul was made on the engine. (This job was not done by plaintiff.) Defendant refused to make payment to plaintiff for Job No. 3, and this litigation followed.
Plaintiff’s main demand is to recover the price of the third job. The defendant paid for the first two jobs. Defendant’s reconventional demand seeks reimbursement for monies paid in connection with Job No. 2; exoneration from payment of Job No. 3; reimbursement for additional repairs (fourth overhaul); and damage for loss of revenues from loss of use of the vessel; as well as the costs for using a competitor’s vessel. The trial court granted judgment in favor of plaintiff on the main demand in the sum of $6,241.90 (price of Job No. 3), together with judicial interest. Judgment was further rendered in favor of defendant on its re-conventional demand for $5,010.28 (costs of Job No. 2) together with judicial interest, each party to bear its own cost. Plaintiff •appeals. Defendant answers the appeal and seeks an increase in reconvention totaling $30,039.78.
It is plaintiff’s position on appeal that the amount of the award on the main demand should be increased to provide for 8 percent interest from 31 days after invoice date,[2] as well as 25 percent attorney’s fees in accordance with the terms of the invoice. Further, plaintiff seeks on appeal the dismissal of the reconventional demand in its entirety. Plaintiff also complains the trial judge erred in not permitting a witness called by plaintiff on cross-examination to be subsequently qualified as an expert.
At the outset, it is important to recognize that the resolution of the claims made in the reconventional demand are disposi-tive of the primary issues in the dispute. It is also important, then, that we consider the reconventional demand first. In this respect, it is clear that no demand is made for reimbursement to Point Landing for the payment of Job No. 1 in the sum of $6,732.68. However, it is Point Landing’s position that Job No. 2 (January, 1970) was defective causing the required Job No. 3 (February 5, 1970) within a period of 30 days. They argue that a 90-day warranty was not satisfied. Accordingly, they insist they are entitled to reimbursement of the price paid for defective Job No. 2 and exoneration from the payment of Job No. 3 *795 which was necessitated, within the warranty period, because of the prior defective job. The total claims sought by defendant in reconvention are as follows:
(1) Amount paid for overhaul No. 2 January 5, 1970 $ 5,010.28
(2) Engine inspection fee February 4, 1970 59.51
(3) Amount paid to Avondale Shipyard Inc., February 1970 1,012.96
(4) Amount paid to Acme Crankshaft Grinding, 1971 883.60
(5) Labor costs for repair of engine 1971 1,100.00
(6) Material costs for repairs— 1971 2,559.93
(7) Loss of revenue from loss of use 1970-1971 19,413.50
TOTAL $30,039.78
Plaintiff, on the other hand, disputes that Job No. 2 was defective. It is Diesel’s position also that running the engine in an overheated condition and striking underwater objects caused the damage necessitating Job No. 2. Diesel further claims Job No. 3, the engine exchange, resulted because of defendant’s failure to allow plaintiff to make a complete overhaul when Job No. 2 was undertaken as recommended by them. Diesel insists defendant ignored their recommendation and would allow only a short overhaul. Had the complete overhaul been done as recommended, according to Diesel, the engine would not have failed necessitating Job No. 3. Therefore, Diesel argues Point Landing is responsible for the payment of Job No. 2 and Job No. 3. Diesel claims any expenses incurred are not its responsibility, but are solely that of defendant.

Job No. 2

The trial judge found Job No. 2 to be faulty. He obviously did not agree with plaintiff’s contention that defendant’s misuse caused the engine failure. The record, in our opinion, supports these conclusions.
In this respect, Donald Wood, Vice President of Point Landing, testified that Jobs No. 1 and No. 2 were under a 90-day warranty, and he paid the Job No. 2 invoice in error since the engine failed within 78 days of Job No. 1. Sam Bird, the manager of Diesel, did not dispute the existence of a warranty. He stated that some warranties extended up to 120 days, or six months, depending upon the engine use. While he did not testify the overhaul of the engine did have a 90-day warranty, there was no denial or contradiction of Wood’s testimony. Absent proof of misuse by Point Landing, it reasonably follows that the engine failed within the warranty period of Job No. 1.
In connection with misuse, plaintiff offered the testimony of John Gravely, a mechanic for Diesel. Gravely testified that his inspection of the engine in January, 1970 indicated the engine had run hot. He recommended a complete overhaul at that time. He further testified that a new crankshaft was placed in the engine in October, 1969 and that his inspection of the engine in February 1970 revealed a broken crankshaft indicating either that it was faulty or that the vessel’s wheel (propeller) had struck an underwater object.
This testimony was rebutted by Wood who testified that there was no report of damage to the vessel resulting from the striking of an underwater object.
Max Macumber, a mechanic at Point Landing, testified that had the propeller hit an underwater object, the shaft and gears, as well as clutch, would have been damaged before the engine suffered damage. He discounted any striking of an object. He stated he examined the engine in January and February, 1970 and found no indication that the engine had overheated.
This evidence was corroborated by Harold Barnett, the captain of the vessel, who testified that he knew of no overheating problems. He supported his statement with the ship’s log which did not indicate any overheating of the vessel’s engine.
Our consideration of the record convinces us that proof was lacking of mis *796 use of the vessel by defendant between Jobs No. 1 and 2, as contended by Diesel. Defendant in reconvention is entitled to reimbursement for the cost of Job No. 2.
Point Landing is also entitled to recovery from damage suffered in January and February resulting from the defective Job No. 2. In this connection, Wood itemized loss of use in January totaling 38% [3] hours, or a total of $1,155.00. He itemized losses for February at 58 hours, or a total of $2,340.-00.[4] (This is incorrect. At $30.00 per hour for 58 hours, the total is $1,740.00.) According to Wood, these figures are taken from the ship’s log. We might point out the hours of loss of use as testified to by Wood are not contradicted.
Proof of any further loss by defendant in reconvention was lacking.[5]
Engine Exchange — Job No. 3
Moreover, we cannot say, as argued by plaintiff, that defendant’s insistence on a short overhaul and their resistance to a complete one as recommended by plaintiff for Job No. 2 necessitated Job. No. 3.
Carl Schaeffer, Port Captain for Point Landing, who had the responsibility of overseeing repairs and maintenance of diesel engines, stated he advised plaintiff to do what was necessary for Job No. 2. Donald Wood of Point Landing could not recall that a complete overhaul job was recommended, but he did state that he did not want any inferior repairs. Furthermore, it is difficult to accept that defendant would insist on a short overhaul job contrary to plaintiff’s recommendation when plaintiff had been doing work for defendant for three years with a volume of business up to $200,000 in one year.
Nevertheless, plaintiff is entitled to payment for the cost of Job No. 3. The evidence is clear the engine operated for 14 months after Job No. 3. James Day, an expert in diesel engine repairs, testified an overhauled engine, such as in the instant case, which runs for 24 hours a day, seven days a week, should run for at least a year, or 8,000 hours. Wood testified that an overhaul should last two years. We cannot say, under the circumstances, that Job No. 3 is defective as contended by defendant in reconvention. Furthermore, Job No. 3 occurred subsequent to the 90-day warranty for Job No. 1, and plaintiff is entitled to payment for this job.
Because we conclude Job No. 3 is satisfactory, defendant in reconvention is not entitled to payment for any damages claimed subsequent to February 5, 1970, the date of the third job.[6]
We find no merit to Diesel’s complaint that the trial judge erred when he would not permit a witness called by plaintiff under cross-examination to be qualified as an expert. Plaintiff called Carl Schaeffer under cross-examination and upon eliciting testimony which appeared to be adverse to Point Landing, plaintiff then sought to qualify this witness as an expert. No attempt was made to qualify the witness ab initio. The request was made only after cross-examination revealed the witness not to be adverse.[7] The court, in our *797 opinion, rightfully refused the request. Proper procedure required plaintiff to qualify Schaeffer as an expert at the commencement of his testimony. While a witness’s testimony may pertain to several facets of a case, a court cannot permit the court’s use as fishing grounds for exploration. Such is the reason for interrogatories and other procedural devices. We might point out that the trial judge offered plaintiff time to apply for supervisory writs from the adverse ruling; however, plaintiff failed to avail himself of this right. The record is not clear that plaintiff proffered testimony to qualify him as an expert or to illicit opinion testimony. Nevertheless, under the circumstances, we find no error in the court’s evidentiary ruling.
Finally, the trial judge properly disallowed interest from 30 days after invoice date and attorney’s fees as specified on the invoice. Attorney’s fees are clearly not recoverable unless agreed to by the parties or unless provided for by statute. See Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970) and Bryan v. Ivey, 114 So.2d 88 (La.App. 1st Cir. 1959). With regard to interest, the case of Jefferson Manufacturing Company, Inc. v. Bayou Shoppe, 210 So.2d 912 (La.App. 2nd Cir. 1968) is pertinent. There the court did allow interest under a similar provision, as in the instant case, utilizing LSA-C.C. art. 1938 when the provision was found in the original purchase order. In our case, however, there is no evidence that any agreement was made at the time of purchase to pay a stipulated interest[8] or that defendant had knowledge of interest charges in .the event of default. Under the circumstances, the trial judge properly rejected plaintiff’s claim for interest as set forth in the invoice.
Accordingly, the judgment of the trial court is amended to allow defendant in re-convention, Point Landing, additional recovery for losses incurred totaling $2,895.-00 [9] as a result of the defective Job No. 2. Point Landing is, therefore, entitled to reimbursement of the sum of $5,010.28, the cost of Job No. 2, and $2,895.00 losses incurred, or a total of $7,905.28. Diesel Engine is entitled to payment of $6,241.90, the cost of Job No. 3, and $59.51, inspection costs, in connection with that job. Accordingly, judgment is rendered in favor of defendant in reconvention, Point Landing, in the sum of $1,603.87 with interest from date of judicial demand. As amended, the judgment is affirmed. Costs are to be paid by plaintiff-appellant, Diesel Engine.
Amended and affirmed.

. This is distinguished from a complete overhaul job.

. The invoice date is March 30, 1970.

. January 3 -12 hours
January 4-24 hours
January 5 - 2% hours
38% hours at §30.00 per hour

. February 3 - 6 hours
February 4-4 hours
February 5-24 hours
February 6-24 hours
58 hours at $30.00 per hour

. The amount paid to Avondale in February, 1970, claimed by defendant in reconvention was not connected with the overhaul job. Other claims for repairs were subsequent to the No. 3 engine exchange. The claim for costs for use of competitor’s vessel was incurred in June, 1971, long after the No. 3 job and no invoice was offered to support this claim.

. See footnote 5, supra.

. The witness was not employed by defendant at the time that he testified. Wood stated he had been dissatisfied with Schaeffer’s services.

. No purchase order or purchase agreement was made a part of the record.

. $1,155.00 — January losses
1,740.00 — February losses
$2,895.00 — Total loss of use